JOHN J. REEVES v. THE STATE.

No. 8617.   Decided May 21, 1924.

Rehearing denied June 25, 1924.

1.—Transporting Equipment—Intoxicating Liquor—Manufacturing Liquor— Accomplice—Corroboration. .

Where the gist of the offense charged was the transporting of the equipment from the jail to the State's witness Milner's home and no one testified to anything showing appellant's connection with such transportation except Milner himself and his wife, in which the latter testified that one Copeland told her that appellant told him to bring the still out, and the record clearly showed that Milner was an accomplice, and that Copeland was another accomplice the corroboration is insufficient to sustain the conviction.

2.—Same—Rehearing—Practice on Appeal.

A reconsideration of the record in the light of the motion for rehearing by the State leaves this court impressed with the view that its original disposition of the case is correct.   Following:   Sapp v. State, 223 S. W. Rep., 468, and other cases.   Distinguishing:   Cohea v. State, 11 Texas Crim. App., 156.

° Appeal from the District Court of Titus.   Tried below before the Honorable R. T. Wilkinson.

Appeal from a conviction of transporting equipment to be used for the purpose of manufacturing intoxicating liquor; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*B. B. Sturgeon,* and *J. A. Ward,* for appellant.—On question that accomplice's testimony cannot be corroborated by another accomplice, Trezevant v. State, 84 S. W. Rep., 828.

On question of accomplice: Warren v. State, 250 S. W. Rep., 429.

*Tom Garrard,* Attorney for the State, and *Grover C. Morris,* Assistant Attorney and *T. C. Hutchings,* District Attorney and *Sam Williams,* County Attorney, for the State. Cited: Cohea v. State, 11 Texas Crim. App., 156.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Titus County of transporting equipment to be used for the purpose of manufacturing intoxicating liquor, and his punishment fixed at three years in the penitentiary.

There are a number of questions complained of on behalf of appellant only one of which we deem it necessary to discuss. It was the State's theory that appellant, who was sheriff of Titus County at the time and had in his custody a number of confiscated and captured stills, made a trade with Ed Milner, who had bought a car from appellant and owed him $230 on same, that if Milner would transfer the car back to appellant he would cancel the balance of the debt and in addition thereto would give to Milner the best still which he had in the jail. Milner testified to his acceptance of this proposition which he said was made to him by appellant, and that he went to the jail with appellant and selected the still which was satisfactory to him and that he and appellant carried it from one part of the jail to another. He then testified that appellant refused to carry the still any further but told him that Dewey Copeland, a deputy sheriff, would bring the still in a car to a point agreed upon on the road between Mt. Pleasant and the home of witness. Milner testified further that he went to t] place agreed upon and waited but Copeland did not come. That he started home and met Copeland. The conversation that then took place between them was excluded. Milner said that when he got home he found in the smoke-house the still agreed upon between himself and appellant. Milner's wife was introduced as a State witness and testified that on the night in question Dewey Copeland came to their home and told her that appellant had sent him out there with some junk and asked her where to put it. She told him to put it in the smoke-house and heard him making a noise like the rattling of tin in a barrel and the next morning she saw in the smoke-house a still which had not been there the night before. The State also introduced the boy who was in the car with Milner on the night in question who testified that on their road home they met a man in a car and had some conversation with him, but he did not undertake

to identify the man or describe him. The State also showed that some time prior to the date of the alleged occurrence officers captured and put in the jail a still the worm of which was identified by them upon this trial as being the one, or like the one, captured by them and so placed in the jail. These officers testified that subsequent to their putting said still in the jail, they found said worm or one exactly like it in the possession of Milner.

The question which we discuss is the sufficiency of the evidence to corroborate the accomplice Milner. The gist of the offense charged was the transporting of the equipment from the jail to Milner's home. No one testified to anything showing appellant's connection with such transportation except Milner himself and that part of the testimony of Mrs. Milner in which she said that Dewey Copeland told her that appellant told him to bring the still out. Milner was clearly an accomplice. Conceding the State's theory of the transportation to be true, Dewey Copeland was also an accomplice, for he was the person who actually transported the equipment. The fact that a worm had been put into the jail that was later found in possession of Ed Milner would not in any sense seem to particularize or point to appellant as having transported it from the jail to Milner's possession. Other people had access to the jail; any one of whom might have been guilty if this fact would have served to particularize or point out them or any of them as the guilty person.

We have then a case in which Milner, an accomplice, testifies against appellant that he and appellant carried the still from one part of the jail to another. Even if such act be a transporting, there is not a particle of corroboration of Milner. Conceding for the sake of the argument that Copeland, another accomplice, actually transported the still from the jail to Milner's house; now if Copeland had taken the stand and sworn that appellant helped him load the stuff and told him which road to take, and to take it to Milner's house, manifestly this would not suffice to show appellant's guilt,—for two or more accomplices cannot make out a case, nor can one corroborate the other; nor can an accomplice corroborate himself, or furnish corroboration as to his testimony incriminating another, by a statement made to a third party, who in turn testifies to such statement. The soundness of this latter conclusion is evident, else those who find themselves hesitant to prosecute Smith because his connection with a crime is wholly dependent on the testimony of A, an accomplice, would needs but advise A to go tell B and C that he was acting with Smith or under Smith's direction; and then B and C could take the stand and by testifying to A's statement, furnish the necessary corroboration. This would be preposterous. We, therefore, conclude that even if Copeland carried the stuff to the Milner place and told Mrs. Milner that appellant told him to bring it, her testimony to this fact would add no legal force as corroboration to the same statement if it had

been given on the stand by Copeland, and we are thus left high and dry on the vital issue of corroboration.

The testimony of the officers that they put in the jail a worm like that later found in Milner's possession, would be no corroboration. Admit that they were wholly correct,—that they put the worm in the jail,—that Copeland carried that worm to the Milner home,—that they afterwards found it in Milner's possession, and where do we get? We seek legal proof that this man Reeves transported this equipment before we can put him in the penitentiary. Milner cannot make such proof. Copeland cannot make it. Their statements made out of his presence, though testified to by a hundred men, could not meet the requirements of the law of the land. The State says that the worm was in the jail,—it was carried out to Milner's,—was found in his possession. Admit it,—Mrs. Milner says Copeland brought it. He was a deputy sheriff. There were several others. All of them had access to the jail. This does not tend to connect appellant. The statement of Copeland alone so tends, and it cannot suffice, for the law says it is not enough. For failure to show corroborating evidence tending to connect appellant, the judgment cannot stand. Sec. 2c of Chap. 61, Acts First and Second Called Session of Thirty-seventh Legislature, has no application to the transporter of equipment.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

June 25, 1924.

MORROW, PRESIDING JUDGE.—A reconsideration of the record in the light of the motion for rehearing filed by the District Attorney and private counsel leaves us impressed with the view that our original disposition of the case was correct. In our judgment, no violence has been done to the rule stated in Cohea v. State, 11 Texas Crim. App., 156. Nothing in the original opinion can be properly construed as intimating that a co-conspirator may not testify to a conspiracy. When a co-conspirator becomes a witness, he may testify to any relevant fact within his knowledge. This we understand to be the anouncement of Judge Hurt in the case mentioned. Nor is there aught in the original opinion contrary to the established rule that acts and declarations of a co-conspirator who has been joined in the commission of a criminal act with the accused on trial may be properly received against the latter when made pending the conspiracy and in pursuance of the common design and when tending to throw light upon the commission of the offense or upon the motive or intent of the perpetrators. Cox v. State, 8 Texas Crim. App., 256; Willey v. State, 22 Texas Crim. App., 408; Sapp v. State, 87 Texas Crim.

Rep., 606, 223 S. W. Rep., 459. We have only insisted that the State in relying upon the declarations of the accomplice Copeland to connect the appellant with the offense charged, comply with the statute which demands the corroboration of the accomplice as a predicate for conviction of the accused. See Art. 801, C. C. P. An accomplice cannot by his own declarations corroborate himself. Short v. State, 61 S. W. Rep., 305; Fitzgerald v. State, 87 Texas Crim. Rep., 34, 219 S. W. Rep., 201, on motion for rehearing.

The motion for rehearing is overruled.

*Overruled.*